WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Orencio Ruelas,<br><br>    Defendant. | No. CR-14-00865-005-PHX-DJH<br><br>**ORDER** |

Defendant filed a Motion for Release Pending Sentencing; or In the Alternative Recommendation for Temporary Compassionate Release Pending Sentencing. (Doc. 1604). The Government has filed its Response (Doc. 1611) to which Defendant has filed a Reply. (Doc. 1614). The Court held oral argument on May 22, 2020, and permitted the Government to supplement its Response, which it did. (Doc. 1625). Upon consideration of the same, the Court issues this Order, denying Defendant's Motion.

**I.    Background and Procedure**

Defendant Orencio Ruelas is currently pending re-sentencing pursuant to an Order of Remand issued by the Ninth Circuit Court of Appeals. (Doc. 1585). The remand order stems from an appeal of his May 2017 post-trial conviction for conspiracy to distribute methamphetamine (21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846) and unlawful use of a communications facility (21 U.S.C. § 843(b)). The circuit court affirmed Defendant's conviction but issued a remand to this Court to re-sentence him due to a sentencing

guideline calculation error.  Defendant's sentencing is presently set for June 23, 2020.[1]

The Defendant's request for release relates to the COVID-19 pandemic and "due to his risk factors"[.]  (*Id*. at 2).  He lists the following health conditions: "Stage 3 (moderate) kidney disease and stage 2 hypertension." (Doc. 1604 at 3).  Defendant also states his age, 55, places him at higher risk "of mortality if infected with COVID-19."   (*Id*. at 4).  Regarding his kidney disease, he states that while being held locally, he underwent surgery for kidney stones and he was diagnosed with a "right kidney is at 0% function and has completely failed, and his left kidney is only working at a 50%[,]" and "he will need to go on a transplant list."  (Doc. 1614 at 11-12).  The gravamen of the Defendant's argument is that Core Civic is not sufficiently equipped to prevent COVID-19 from infecting detainees, and coupled with his health conditions, he is at greater risk of "mortality" if he is infected; thus, he meets the "exceptional reasons" warranting release under 18 U.S.C. 3145(c).  (*Id*. at 7).

## II.   Law and Analysis

As an initial matter, the Court notes that the Defendant's motion seeks release "pursuant to 18 U.S.C. § 3142(i), or in the alternative, for the Court to issue a recommendation to the Bureau of Prisons that they consider Mr. Ruelas for compassionate release pending his [re-]sentencing." (Doc. 1604 at 1).  However, Defendant's Reply concedes that section 3142(i) is inapplicable to his circumstance because he is not "pending trial"; rather, he is awaiting re-sentencing post-appeal and post-conviction. (*See* Doc. 1614 at 3-4).[2]  At oral argument, Defendant's counsel also noted that the Government has the better argument as to the inapplicability of section 3142(i).  Given this concession, the Court need not analyze Defendant's request under this section.

---

[1] As noted by the Government, Defendant was returned to Arizona by the Bureau of Prisons in Texas to be resentenced on April 13, 2020. In March, the COVID-19 pandemic had arisen, and the Arizona District Court, pursuant to General Order 20-15 suspended the majority of in-person court appearances for health safety reasons.  Defendant did not wish to appear at his re-sentencing by video-teleconference, as permitted by the CARES Act. Thus, the Court continued his hearing, which currently remains on its calendar.
[2] Because Defendant's Reply responds to other statutory provisions not mentioned in his Motion but were discussed by the Government, the Court will not consider these arguments as being raised for the first time in a Reply.

Further, Defendant does not address the Government's contention that compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) may only be available once he has exhausted his administrative remedies with the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A) ("the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has *fully exhausted all administrative rights . . .*" (emphasis added)). Although the caption of his Motion references "Compassionate Release" (Doc. 1604 at 1), Defendant does not state that he underwent such review, and indeed does not respond to the Government's argument at all. Therefore, the Court presumes that Defendant has abandoned this argument and is not seeking compassionate release under section 3582(c)(1)(A), obviating a need for the Court to address this argument.

The Court will analyze Defendant's motion for release pursuant to 18 U.S.C. § 3143(a)(2)(B) and 18 U.S.C. § 3145(c). Section 3143(a)(2) applies to a motion to release pending resentencing, *see United States v. Masters*, 2016 WL 10931242 (Jan. 26, 2016), whereas section 3145(c) may form a basis of relief if the defendant shows "exceptional reasons." Both sections 3143(a)(2)(B) and 3145(c) require a defendant to show by "clear and convincing evidence" that he is neither a flight risk nor a danger to another or the community.

Applying section 3143(a)(2)(B) to Defendant, the Court must presume that, having been convicted by a jury of a drug trafficking crime, punishable by ten or more years, he is a flight risk or poses a danger to others or the community. The Defendant may overcome this presumption only by carrying his burden to convince the Court that he is neither. *United States v. Daychild*, 357 F.3d 1082 (9th Cir. 2004). The parties already know that this Court applied the presumption to Defendant because he was convicted by a jury of conspiracy[3] to traffic in 500 grams or more of methamphetamine, and four-counts of use of a communication facility, in that conspiracy. (Doc. 1235). The drug conspiracy is punishable by ten-years to life, and the use of a communication facility is punishable by

---

[3] Defendant was one among seventeen named co-conspirators. (Doc. 3).

four-years on each count. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846; 21 U.S.C. § 843(b).

Upon conviction, Defendant was thus presumed a flight risk and a danger, and he did not seek to overcome that presumption at that time. Accordingly, the Court ordered him detained pending sentencing. The Court subsequently imposed a 235-month sentence, the low-end of his guideline range,[4] followed by sixty-months on supervised release. (Doc. 1458; Doc. 1519)[5]. In so doing, the Court referenced that the Defendant was involved in three separate methamphetamine drug transactions for an individual who was introduced to the Defendant by a family member who resides in Mexico. (Doc. 1519 at 17). Defendant then contacted two co-conspirators to supply the methamphetamine, and those individuals obtained the methamphetamine from yet another. (*Id.*). The Court further noted the seriousness of the crime due to the high-purity of the methamphetamine involved, and its effect on the individual and society as a whole. (*Id.*). In assessing the Defendant's character, the Court noted that he had obvious knowledge of who could supply him with drugs and how to arrange the drug transactions through use of cellular phones, meeting places, and evading law enforcement surveillance. (*Id.* at 43). Moreover, the Court reflected on the trial evidence that showed that, some years prior, the Defendant had been involved in drug trafficking when he was found in a hotel room with large sums of cash, although he was released and not convicted. (*Id.* at 44). These factors warranted the sentence imposed. The only apparent change in the Defendant's case is that he faces a lower sentencing guideline range based on a corrected amount of methamphetamine involved. Yet, by statute, he still qualifies for a minimum mandatory sentence of ten-years. And, he cannot overcome the presumption that he is a flight risk or a danger to others or the community.

Section 3145(c), upon which Defendant seems to more wholly rely, states:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of

---

[4] On appeal, the circuit court upheld Defendant's conviction, but remanded his case to this Court for resentencing, finding that the Court errored in applying more weight to the methamphetamine than reflected at trial.
[5] Doc. 1519 is a certified transcript of the sentencing hearing on October 23, 2017.

- 4 -

> . . . section 3731 of this title. The appeal shall be determined promptly. A person . . . who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate.[6]

18 U.S.C. § 3145(c) (emphasis added). A prerequisite to a determination of "exceptional reasons" is that the Defendant must meet the conditions set forth in section 3143(a)(1) or (b)(1) by clear and convincing evidence that "he is not likely to flee or pose a danger to the safety of any other person or the community if released" under certain conditions.

### a. Flight Risk

The Defendant states that he is not a flight risk because, prior to trial, he overcame the presumption of detention and was released on his own recognizance, and he remained so until the jury's conviction. (Doc. 1604 at 2). He further submits that he is a United States citizen, he has family in the area, he has a new granddaughter, and he is not intent on leaving them. (Doc. 1614 at 7). He also argues that, upon resentencing, he has "a good prospect" of "a significantly shorter sentence than he previously received." (Doc. 1604 at 2-3). At oral argument, the Defendant also argued that he would be willing to be electronically monitored. All of these factors, Defendant contends indicate that he will not flee. The Government vehemently disagrees.

The Government contends that the Defendant remains a flight risk given the lengthy sentence he faces. (Doc. 1611 at 11). The Government points out that, despite the Defendant's assertion that "[h]e now has a good prospect, although no guarantee, of a significantly shorter sentence than he previously received[,]" he still faces a minimum mandatory ten-year sentence, and his guideline range is from 188 months to 235 months.

---

[6] The Court doubts that this provision was meant to fit Defendant's circumstances because it cross-references the appellate procedures (18 U.S.C. § 3731), which this is not, and this Defendant is not pending a "detention order" but rather he awaits re-sentencing post appeal and following a jury's guilty verdict. The Ninth Circuit nonetheless has an expansive view of its application to individuals who are detained, generally. *See United States v. Garcia* 340 F.3d at 1013, 1022 (9th Cir. 2003). Thus, the Court will analyze Defendant's motion according to this precedent.

(*Id*. at 11-12).  The Government aptly notes that the Court previously sentenced the Defendant to 235 months, which was the low-end of the applicable guideline range.  Thus, the Government essentially contends that a strong incentive to flee remains.  (*Id.*).  The Court agrees.  The Defendant has not demonstrated, by clear and convincing evidence, that he is not a flight risk.  The length of sentence he faces, coupled with the certainty that he will be resentenced for the crimes of conviction, undercut his argument.  *See Garcia* 340 F.3d at 1019 ("[t]he length of the prison sentence-both the maximum and the sentenced imposed- may also be relevant, for several reasons . . [it] may be a proxy for the seriousness of the crime.").

Although the Defendant argues that he has family to be with, and that he would be willing to abide by an ankle monitoring device, he does not address the other factors that, in this Court's view, make him a "risk" of flight.  That is, as was shown at trial, the Defendant has family in Mexico, who obviously have a demanding and substantial hold on him.  Further, at sentencing, numerous immediate family members discussed his good character, seemingly oblivious to his involvement in drug trafficking.  The Court is also aware that he has family who reside in Mexico, with whom he had easy access.  And, while at the time of trial he ran an air-conditioning business, that does not benefit the Defendant either because he was simultaneously running that business while he was involved in the drug conspiracy. Thus, the Defendant has not overcome his burden to show he is not a flight risk.

### b. Danger

Defendant also argues that he is not a danger because this is his first conviction, it did not involve violence, or the use of firearms, and the drug transaction occurred over a two week period.  (Doc. 1614 at 4-5).  He also argues that his co-defendants have been "taken out of action," and are no longer around and "[t]hey are obviously not going to start setting up new drug deals in the weeks or months left prior to sentencing."  (*Id*. at 5).

The Government points out that the Court may consider, generally, the dangerous circumstances inherent in drug trafficking conspiracies.  (Doc. 1611 at 9).  The Court agrees.  *See Garcia*, 340 F.3d at 1019 ("the Act demands exceptional reasons only for those

convicted of violent crimes, drug offenses for which the maximum penalty is at least ten years in prison[.]"). The Court notes that the Defendant was involved, not in an aberrant act, but acts that lasted multiple years, and involved multiple defendants. The Defendant, once contacted by his relative in Mexico, undertook to satisfy that request by helping a previously unknown individual obtain methamphetamine. And he did so through multiple channels involving multiple people and multiple cities, which yielded three methamphetamine transactions. Moreover, the Defendant's suppliers had access to 2.9 kilograms of methamphetamine with high-purity levels, including actual methamphetamine. Finally, while some of his co-conspirators are detained or have been deported, others are released. Under these circumstances, the Defendant cannot overcome the presumption of dangerousness by clear and convincing evidence.

   **c. Exceptional Reasons**

Like other courts, this Court observes that the Congress has not defined what is an "exceptional reason." *See Garcia*, 340 F.3d at 1016. District courts have applied a wide array of factors in finding or not finding exceptional reasons to release certain detainees pending appeal. *Id*. at 1018. Thus, it is observed that this statute gives district courts broad discretion to consider any number of circumstances that come before it. *See United States v. Cruz*, 2020 WL 1659922 (D. Ariz. April 3, 2020)

In arguing that there are exceptional reasons for his release, the Defendant relies heavily on the premise that, because he is being held in custody at Core Civic, his current age of fifty-five and his health conditions, kidney disease and hypertension, make him more susceptible to contracting COVID-19. (Doc. 1604 at 3-4)("[Defendant] suffers from Stage 3 (moderate) kidney disease and stage 2 hypertension[,] [t]he kidney disease makes him more susceptible to complications from a Covid-19 infection. Hypertension also increases one's risk, when combined with other factors."). The Defendant relies primarily on general national data related to the COVID-19 pandemic. Even considering the Defendant's health factors, the Court does not find that they present the "exceptional reasons" to permit him to be released to home.

First, as stated above, the prerequisite to release for "exceptional reasons" requires

that the Defendant prove by clear and convincing evidence that he is neither a flight risk nor a danger. He has not done so. Second, Core Civic is currently abiding by the Center for Disease Control Guidance for Correction and Detention Facilities.[7] (Doc. 1625-1)(Kline Dec'l at ¶ 61). Further, Core Civic has established a list of COVID-19 high-risk detainees, who are regularly monitored, and the Defendant is presently not on that list. (Doc. 1625 at 2; ¶ 2). Thus, the Court declines to find exceptional reasons exist warranting the Defendant's release pending his resentencing hearing.

Accordingly,

**IT IS ORDERED denying** Defendant's Motion for Release Pending Sentencing; or In the Alternative, Recommendation for Temporary Compassionate Release Pending Sentencing. (Doc. 1604).

Dated this 3rd day of June, 2020.

Honorable Diane J. Humetewa
United States District Judge

---

[7] CDC *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed June 1, 2020).